## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **SOPHIA IVY**, on behalf of herself and all others similarly situated,<br><br>              Plaintiff,<br>v.<br><br>**JANI-KING INTERNATIONAL, INC.,**<br><br>          Defendant. | Case No. 3:25-cv-01062<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff ("Plaintiff") brings this action on behalf of herself, and all others similarly situated against Defendant Jani-King International, Inc. ("Jani-King" or "Defendant"). Plaintiff seeks to obtain damages, restitution, and injunctive relief for a class of individuals ("Class" or "Class Members") who are similarly situated and have received notices of the data breach of Jani-King. Plaintiff makes the following allegations upon information and belief, except as to her own actions, the investigation of counsel, and the facts that are a matter of public record.

## NATURE OF THE ACTION

1.      Plaintiff brings this nationwide class action against Jani-King as a result of a widespread and preventable data breach that compromised the personal and sensitive information of thousands, if not millions, of individuals across the United States.

2.      This action arises from Jani-King's failure to adequately secure and protect personally identifiable information ("PII") entrusted to it by customers, employees, affiliates, and franchisees, including full names, addresses, Social Security numbers, financial information, and other sensitive personal identifiers.

1

3.    The data breach occurred between November 26, 2024, and December 21, 2024, when an unauthorized actor gained access to Jani-King's internal network (the "Data Breach").

4.    Despite knowing the severity of the breach, Jani-King delayed public disclosure and failed to provide timely notice to affected individuals, thereby exacerbating the harm.

5.    Jani-King's negligence in failing to implement adequate cybersecurity measures, combined with its failure to act swiftly to notify those affected, constitutes a clear violation of consumer protection laws, privacy laws, and common law duties.

6.    As a consequence of the Data Breach Plaintiff and Class Members are at risk of having their identities stolen, or their PII.

7.    Plaintiff and Class Members now face ongoing and substantial risks of identity theft, fraud, and other misuse of their private information. They seek damages and equitable relief to remedy the harms caused by Jani-King's conduct.

8.    Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' PII that they collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access of an unknown third party and precisely what specific type of information was accessed.

9.    Defendant maintained the PII in a reckless manner. In particular, the Private Information was maintained by Defendant on Jani-King's computer network in a condition vulnerable to cyberattacks. Defendant failed to properly safeguard sensitive information, including names and Social Security numbers, and delayed in timely notifying impacted individuals. Thus, Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

10.    Defendant disregarded the privacy and property rights of Plaintiff and Class Members, by inter alia, *inter alia*, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to disclose that they did not have adequately robust computer systems and security practices to safeguard Class Members' Private Information; failing to take standard and reasonably available steps to prevent the Data Breach; and failing to provide Plaintiff and Class Members prompt and accurate and complete notice of the Data Breach.

11.    Plaintiff's and Class Members' identities are now at substantial and imminent risk because of Defendant's negligent conduct since the Private Information that Defendant collected and maintained (including Social Security numbers) is now in the hands of data thieves.

12.    With the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, filing false medical claims using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

13.    As a result of the Data Breach, Plaintiff and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

14.    Plaintiff and Class Members may also incur out of pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures

to deter and detect identity theft, as well as sustaining damage by failing to timely receive their government assistance.

15.    Through this Complaint, Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed during the Data Breach.

16.    Accordingly, Plaintiff brings this action against Defendant for negligence, breach of implied contract, unjust enrichment, California consumer statutes and declaratory relief, seeking redress for Jani-King's unlawful conduct.

17.    Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate, long term credit monitoring services funded by Defendant, and declaratory relief.

## PARTIES

18.    Plaintiff Sophia Ivy is a resident of Brandon, Florida. In approximately 1992, Plaintiff's father purchased a Jani-King franchise. Around approximately the year 2000, her father transferred his franchise interest to Plaintiff, and she became the franchisee owner of record. Plaintiff operated her franchise until approximately 2009, when she chose not to renew her franchise agreement with Jani-King. Since that time, Plaintiff has had no business involvement or relationship with Defendant. Despite the termination of her franchise relationship over 15 years ago, Defendant retained her sensitive personal information, including her full name and Social Security number, and did not safeguard it.

19.    Plaintiff received a data breach notification letter in the mail on or about April 16, 2025 from Defendant indicating to her that her PII had been subject to the Data Breach.

20.    Plaintiff is careful about sharing her personal information and does not knowingly disclose her Social Security number or other sensitive identifiers unless absolutely necessary and with a clear understanding of how the data will be stored and used. Plaintiff makes efforts to safeguard her PII, including avoiding disclosure to unknown or unnecessary parties and regularly monitoring her financial accounts for suspicious activity. The exposure of her PII in the Jani-King breach was not the result of any conduct or action on her part.

21.    Since the Data Breach, Plaintiff has experienced an increase in spam calls as well as spam emails and spam text messages.

22.    Defendant Jani-King International, Inc. is a corporation organized under the laws of Delaware with its principal place of business located at 16885 Dallas Parkway,  Suite 180, Addison, Texas 75001. The registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

23.    Jani-King is a global commercial cleaning and janitorial services company that operates a large network of independently owned franchise businesses. It provides cleaning services for a variety of industries, including offices, healthcare, hospitality, manufacturing, and retail. Through its franchising model, Jani-King collects and retains significant volumes of sensitive personal and financial information from franchisees, former franchisees, employees, and contractors.

## JURISDICTION AND VENUE

24.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed

class, and at least one member of the class is a citizen of a state different from Defendant. Defendant is a citizen of Texas.

25.    This Court has general personal jurisdiction over Defendant because Defendant's headquarters and principal place of business are located within the Dallas Division of the Northern District of Texas.

26.    Venue is proper in the Dallas Division of the Northern District of Texas under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Defendant's corporate headquarters and principal place of business is located in the Dallas Division of the Northern District of Texas.

## FACTUAL ALLEGATIONS

27.    Jani-King stores and maintains significant volumes of PII relating to its franchisees, former franchisees, and employees, including full names, addresses, Social Security numbers, financial information, and other sensitive identifiers.

28.    In late 2024, unauthorized actors accessed portions of Jani-King's internal systems and exfiltrated files containing sensitive personal information.

29.    Plaintiff Sophia Ivy received a notification dated April 16, 2025, indicating that her full name and Social Security number were among the data potentially compromised. The Defendant determined "that an unauthorized third party accessed and copied filed contained within certain segments of our network between November 26, 2024 and December 21, 2024."

30.    The breach was discovered on or about December 21, 2024, after suspicious activity was detected within Jani-King's network. Subsequent forensic investigation revealed that unauthorized access occurred over a span of nearly one month.

31.    The unauthorized actor was able to exfiltrate highly sensitive PII, including names, addresses, and Social Security numbers. There is no indication that the data was encrypted at the time of theft.

32.    Jani-King did not begin notifying impacted individuals until April 2025, nearly four months after the breach occurred, thereby delaying the opportunity for victims to take prompt protective measures.

33.    Plaintiff had no ongoing business relationship with Jani-King, demonstrating that Defendant retained highly sensitive data longer than necessary without adequate safeguards.

34.    As a direct result of the breach, Plaintiff and Class Members face a significantly heightened risk of identity theft, financial fraud, medical identity theft, tax fraud, and other misuse of their personal data. The stolen information is highly valuable and often sold on the dark web, where it is used by criminals to open fraudulent accounts, file false tax returns, and cause lasting financial harm.

35.    Jani-King's Privacy Policy and public statements represent that it uses appropriate security measures to protect personal data. However, Defendant failed to meet these obligations.

36.    Defendant failed to encrypt or adequately protect the PII in its possession, leaving sensitive data vulnerable to unauthorized access.

37.    Defendant delayed timely notification to impacted individuals, further exacerbating harm by denying them the opportunity to take timely protective measures.

38.    Plaintiff and Class Members have expended significant time and money monitoring accounts, placing fraud alerts, freezing credit, and taking other preventive steps due to the breach. Upon notification of the Data Breach the Plaintiff spent significant personal and uncompensated time dealing with the consequences of the Defendant failing to protect her

sensitive personal information (including her social security number) having no justification to retain it in its database for over a decade and a half. This necessary uncompensated time by the Plaintiff would not have been spent but for the Defendant's negligence.

39.    Plaintiff and Class Members now face a continuing risk of identity theft, financial fraud, and related harms.

40.    Defendant financially benefits from retaining and utilizing individuals' PII while shifting the risks and costs of inadequate data security onto consumers.

41.    Upon information and belief, Defendant failed to follow reasonable and customary industry-standard practices for securing sensitive PII, including failure to encrypt personal information, failure to conduct regular risk assessments, and failure to adequately train employees regarding data security.

42.    Defendant's conduct violated its own internal policies and public representations, directly causing harm to Plaintiff and Class Members.

43.    Jani-King maintains a publicly available privacy policy in which it assures customers that it implements reasonable physical, technical, and administrative safeguards to protect personal data from unauthorized access, use, or disclosure.

44.    However, Jani-King failed to implement the very measures it represented in its privacy policies. The systems in place were outdated, lacked end-to-end encryption, and were not monitored effectively, leaving critical data vulnerable to cyberattack.

45.    Accordingly, Jani-King maintained and stored a significant volume of sensitive identity data that should have been afforded the highest degree of protection. Its failure to do so directly contributed to the scope and impact of the breach.

46.    Jani-King's failure to secure sensitive information and notify affected individuals in a timely fashion violated industry standards, FTC guidelines, and its own privacy policy.

47.    The exposure of PII places individuals at imminent risk of identity theft, credit fraud and other financial harms.

48.    Plaintiff and Class Members have already suffered ascertainable losses, including the value of their private information, time spent monitoring accounts, and emotional distress from loss of privacy and fear of fraud.

49.    The breach was entirely preventable. Reasonable cybersecurity protocols, including timely software patching, encryption, and network monitoring, could have averted or mitigated the attack.

50.    Consumers, in general, demand that businesses that require highly sensitive PII will provide security to safeguard their PII, especially when Social Security numbers are involved.

51.    Because of this targeted, intentional cyberattack, data thieves were able to gain access to and obtain data from Jani-King that included the Private Information of Plaintiff and Class Members.

52.    Upon information and belief, the Private Information stored on Jani-King's network was not encrypted.

53.    As a result of the Data Breach, Jani-King now encourages Class Members to take steps to mitigate identity theft, a tacit admission of the imminent risk of identity theft faced by Plaintiff and Class Members.

54.    Jani-King offer to Plaintiff and Class Members to enroll in their offer for Equifax credit monitoring and identity theft protection for one year, an inadequate amount of time, is an

acknowledgment that the impacted consumers are subject to a substantial and imminent threat of fraud and identity theft.

55.    Jani-King had obligations created by contract, industry standards, and common law to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

56.    Plaintiff  suffered actual injury from having Private Information exposed as a result of the Data Breach including, but not limited to  (a) damages to and diminution in the value of Private Information—a form of intangible property that Plaintiff entrusted to Jani-King; (b) loss of privacy; and (c) imminent and impending injury arising from the increased risk of fraud and identity theft.

57.    As a result of the Data Breach, Plaintiff will continue to be at heightened risk for fraud and the attendant damages, for years to come.

**Jani-King Had a Duty to Secure Class Members Private Information**

58.    At all relevant times, Jani-King had a duty to Plaintiff and Class Members to properly secure their PII, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff and Class Members, and to promptly notify Plaintiff and Class Members when Jani-King became aware that their PII was compromised.

59.    Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

60.     Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

    a.  Maintaining a secure firewall configuration;

    b.  Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

    c.  Monitoring for suspicious or irregular traffic to servers;

    d.  Monitoring for suspicious credentials used to access servers;

    e.  Monitoring for suspicious or irregular activity by known users;

    f.  Monitoring for suspicious or unknown users;

    g.  Monitoring for suspicious or irregular server requests;

    h.  Monitoring for server requests for PII;

    i.  Monitoring for server requests from VPNs; and

    j.  Monitoring for server requests from Tor exit nodes.

61.     Upon information and belief, the Private Information stored on Jani-King's network was not encrypted.

62.     As a result of the Data Breach, Jani-King now encourages Class Members to take steps to mitigate identity theft, a tacit admission of the imminent risk of identity theft faced by Plaintiff and Class Members.

63.     Jani-King is encouraging Plaintiff and Class Members to enroll in credit monitoring and identity theft restoration services is an acknowledgment that the impacted consumers are subject to a substantial and imminent threat of fraud and identity theft.

64.     Jani-King had obligations created by contract, industry standards, and common law to keep Plaintiff' and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

65.     Jani-King could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting their equipment and computer files containing PII.

**Defendant Acquires, Collects, and Stores Plaintiff' and Class Members' PII**

66.     Jani-King acquires, collects, and stores a massive amount of PII. By obtaining, collecting, and using Plaintiff's and Class Members' PII for its own financial gain and business purposes, Defendant assumed legal and equitable duties and knew that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

67.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their PII.

68.     Individuals place a high value not only on their PII, but also on the privacy of that data. Identity theft causes severe negative consequences to its victims, as well as severe distress and hours of uncompensated lost time trying to fight against the impact of identity theft.

69.     A data breach increases the risk of becoming a victim of identity theft. Victims of identity theft can suffer from both direct and indirect financial losses. According to a research study published by the Department of Justice, "[a] direct financial loss is the monetary amount the offender obtained from misusing the victim's account or personal information, including the estimated value of goods, services, or cash obtained. It includes both out-of-pocket loss and any losses that were reimbursed to the victim. An indirect loss includes any other monetary cost caused by the identity theft, such as legal fees, bounced checks, and other miscellaneous expenses

that are not reimbursed (e.g., postage, phone calls, or notary fees). All indirect losses are included in the calculation of out-of-pocket loss."[1]

70.    Individuals, like Plaintiff and Class members, are particularly concerned with protecting the privacy of their Social Security numbers, which are the key to stealing any person's identity and is likened to accessing your DNA for hacker's purposes.

71.    Data Breach victims suffer long-term consequences when their Social Security numbers are taken and used by hackers. Even if they know their Social Security numbers are being misused, Plaintiff and Class Members cannot obtain new numbers unless they become a victim of social security number misuse.

72.    The Social Security Administration has warned that "a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such address, remains the same."[2] In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[3]

73.    Additionally in 2021, there was a 15.1% increase in cyberattacks and data breaches since 2020. Over the next two years, in a poll done on security executives, they have predicted an increase in attacks from "social engineering and ransomware" as nation-states and

---

[1].    "Victims of Identity Theft, 2018," U.S. Department of Justice (April 2021, NCJ 256085) available at: https://bjs.ojp.gov/content/pub/pdf/vit18.pdf (last accessed Dec. 5, 2024).
[2].    https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Dec. 5, 2024).
[3].    https://www.cnet.com/tech/services-and-software/record-number-of-data-breaches-reportedin-2021-new-report-says/ (last accessed Dec. 5, 2024).

cybercriminals grow more sophisticated. Unfortunately, these preventable causes will largely come from "misconfigurations, human error, poor maintenance, and unknown assets."[4]

74.     In light of high profile data breaches at other industry leading companies, including Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that its computer network would be targeted by cybercriminals.

75.     Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, and hopefully can ward off a cyberattack.

76.     According to an FBI publication, "[r]ansomware is a type of malicious software, or malware, that prevents you from accessing your computer files, systems, or networks and demands you pay a ransom for their return. Ransomware attacks can cause costly disruptions to and the loss of critical information and data."[5] This publication also explains that "[t]he FBI does not support paying a ransom in response to a ransomware attack. Paying a ransom doesn't guarantee you or your organization will get any data back. It also encourages perpetrators to target more victims and offers an incentive for others to get involved in this type of illegal activity."[6]

---

[4].     https://www.forbes.com/sites/chuckbrooks/2022/06/03/alarming-cyber-statistics-for-mid-year2022-that-you-need-to-know/?sh=176bb6887864 (last accessed Dec. 5, 2024).

[5].     https://www.fbi.gov/how-we-can-help-you/safety-resources/scams-and-safety/common-scamsand-crimes/ransomware (last accessed Dec. 27, 2024).

[6].     *Id.*

77.    Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII private and secure, Jani-King failed to take appropriate steps to protect the PII of Plaintiff and the proposed Class from being compromised.

### At All Relevant Times Defendant Had a Duty to Plaintiff and Class Members to Properly Secure their Private Information

78.    At all relevant times, Jani-King had a duty to Plaintiff and Class Members to properly secure their PII, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff and Class Members, and to promptly notify Plaintiff and Class Members when Jani-King became aware that their PII was compromised.

79.    Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, and conduct proper due diligence in their use of Cleo, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

80.    Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

    a.  Maintaining a secure firewall configuration;

    b.  Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

    c.  Monitoring for suspicious or irregular traffic to servers;

    d.  Monitoring for suspicious credentials used to access servers;

    e.  Monitoring for suspicious or irregular activity by known users;

    f.   Monitoring for suspicious or unknown users;

    g.   Monitoring for suspicious or irregular server requests;

    h.   Monitoring for server requests for PII;

    i.   Monitoring for server requests from VPNs; and

    j.   Monitoring for server requests from Tor exit nodes.

81.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[7] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[8]

82.    The ramifications of Defendant's failure to keep consumers' PII secure are long lasting and severe. Once PII is stolen, particularly Social Security and driver's license numbers, fraudulent use of that information and damage to victims including Plaintiff and the Class may continue for years.

**The Value of Private Information and the Effects of Unauthorized Disclosure**

83.    At all relevant times, Defendant was well aware that the Private Information it collects from Plaintiff and Class Members is highly sensitive and of significant value to those who would use it for wrongful purposes.

---

[7].    17 C.F.R. § 248.201 (2013).

[8].    *Id*.

84.    Private Information is a valuable commodity to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[9] Indeed, a robust "cyber black market" exists in which criminals openly post stolen PII on multiple underground Internet websites, commonly referred to as the dark web.

85.    The ramifications of Jani-King's failure to keep Plaintiff and Class member's Private Information secure are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for six to 12 months or even longer.

86.    Approximately 21% of victims do not realize their identity has been compromised until more than two years after it has happened. [10] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[11]

87.    Jani-King is offering a limited time offer for identity theft monitoring and identity theft protection.  Its limitation is inadequate when Class members are likely to face many years of identity theft.  Moreover, this type of inadequate protection place the burden to monitor and report suspicious activity on the Plaintiff and Class members rather than Defendant.

---

[9].     Federal Trade Commission, *Warning Signs of Identity Theft, available at:* https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last accessed July 20, 2022).
[10].    *See* Medical ID Theft Checklist, *available at:* https://www.identityforce.com/blog/medical-id-theft-checklist-2.
[11].    Experian, *The Potential Damages and Consequences of Medical Identify Theft and Healthcare Data Breaches ("Potential Damages"), available at:* https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf.

88.     These services are wholly inadequate to provide Plaintiff and Class members with sufficient compensation and protection for the multiple years of ongoing theft identity and other damage that they will face as a consequence of the Data Breach.

89.     The injuries to Plaintiff and Class members were directly and proximately caused by Jani-King's failure to maintain or implement adequate data security measures for Plaintiff and Class members.

### Jani-King Failed to Comply with FTC Guidelines

90.     Jani-King was also prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

91.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[12]

92.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[13] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer

---

[12].     Federal Trade Commission, *Start With Security: A Guide for Business*, *available at*: https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[13].     Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, available at: https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

93.    The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[14]

94.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

**Concrete Injuries are Caused by Defendant's Inadequate Security**

95.    Plaintiff and Class Members reasonably expected that Defendant would provide adequate security protections for their PII, and Class Members provided Defendant with sensitive personal information, including their names, addresses, and Social Security numbers.

96.    Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. Plaintiff and other individuals whose PII were entrusted with Defendant understood and expected that, as part of that relationship, they would receive data security, when in fact Defendant did not provide the expected data security. Accordingly, Plaintiff and Class

---

[14] FTC, *Start With Security*, *supra* note 16.

Members received data security that was of a lesser value than what they reasonably expected. As such, Plaintiff and the Class Members suffered pecuniary injury.

97.     Cybercriminals intentionally attack and exfiltrate PII to exploit it. Thus, Class Members are now, and for the rest of their lives will be, at a heightened and substantial risk of identity theft.  Plaintiff have also incurred (and will continue to incur) damages in the form of, inter alia, loss of privacy and costs of engaging adequate credit monitoring and identity theft protection services.

98.     The cybercriminals who obtained the Class Members' PII may exploit the information they obtained by selling the data in so-called "dark markets" or on the "dark web." Having obtained these names, addresses, Social Security numbers, and other PII, cybercriminals can pair the data with other available information to commit a broad range of fraud in a Class Member's name, including but not limited to:

- obtaining employment;

- obtaining a loan;

- applying for credit cards or spending money;

- filing false tax returns;

- stealing Social Security and other government benefits; and

- applying for a driver's license, birth certificate, or other public document.

99.     In addition, if a Class Member's Social Security number is used to create false identification for someone who commits a crime, the Class Member may become entangled in the criminal justice system, impairing the person's ability to gain employment or obtain a loan.

100.     As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and the other Class Members have been deprived of the value of their PII, for which there is a well-established national and international market.

20

101.    Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for fraudulent misuse of this information to be detected.

102.    Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the other Class Members at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.

103.    As a result of the Data Breach, Plaintiff and Class Members have already suffered injuries, and each are at risk of a substantial and imminent risk of future identity theft.

## CLASS ALLEGATIONS

104.    Plaintiff brings this class action on behalf of themselves and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

105.    The Class that Plaintiff seeks to represent is defined as follows:

> **Nationwide Class:**
> **All individuals residing in the United States whose Private Information was compromised in the Data Breach and received a data breach notification letter.**

106.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors, current or former employees, and subcontractor used by Defendant in performing its duties; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

107.    Plaintiff reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate, including but not limited sub-classes and/or state-specific classes depending on evidence and information learning during discovery.

108.    Numerosity, Fed R. Civ. P. 23(a)(1): The Class is so numerous that joinder of all members is impracticable. The Class includes thousands of individuals whose Private Information may have been improperly accessed in the Data Breach.

109.    Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Class predominate over any questions affecting only individual Class Members. These include:

a.  Whether and when Defendant actually learned of the Data Breach and whether its response was adequate;

b.  Whether Defendant owed a duty to the Class  to exercise due care in collecting, storing, safeguarding and/or obtaining their Private Information;

c.  Whether Defendant breached that duty;

d.  Whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff and Class Members' Private Information;

e.  Whether Defendant acted negligently in connection with the monitoring and/or protecting of Plaintiff's and Class Members' PII;

f.  Whether Defendant knew or should have known that it did not employ reasonable measures to keep Plaintiff's and Class Members' PII secure and prevent loss or misuse of that Private Information;

g.  Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

h.  Whether Defendant caused Plaintiff's and Class Members' damages;

i.  Whether Defendant violated the law by failing to promptly notify Class Members that their Private Information had been compromised;

j.  Whether Plaintiff and the other Class Members are entitled to actual damages, credit monitoring, and other monetary relief;

k.  Whether Defendant violated common law and statutory claims alleged herein

110.  Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiff' claims are typical of those of other Class Members , because all had their Private Information compromised as a result of the Data Breach, due to Defendant's misfeasance.

111.  <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff' challenge of these policies hinges on Defendant's conduct with respect to the Class  as a whole, not on facts or law applicable only to Plaintiff.

112.  <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that she has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiff has retained counsel

experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

113.    <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

114.    The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class  for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each individual Class  Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff were exposed is similar to that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

115.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

116.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

117.    Unless a Class-wide injunction is issued, Plaintiff and Class Members remain at risk that Defendant will continue to fail to properly secure the Private Information of Plaintiff and Class and Members resulting in another data breach, continue to refuse to provide proper notification to Class Members regarding the Data Breach, and continue to act unlawfully as set forth in this Complaint.

118.    Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class and as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

119.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to the following:

a.    Whether Defendant owed a legal duty to Plaintiff and Class and Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

b.    Whether Defendant breached a legal duty to Plaintiff and Class and Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

c.  Whether Defendant failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

d.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

e.  Whether Class Members are entitled to actual damages, credit monitoring or other injunctive relief, and/or punitive damages as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

### Count I
### NEGLIGENCE
### (On behalf of Plaintiff and the Nationwide Class)

120.    Plaintiff re-alleges and incorporates by reference the paragraphs 1 though 18 above as if fully set forth herein.

121.    Defendant gathered and stored the Private Information of Plaintiff and Class Members as part of the regular course of its business operations. Plaintiff and Class Members were entirely dependent on Defendant to use reasonable measures to safeguard their Private Information and were vulnerable to the foreseeable harm described herein should Defendant fail to safeguard their Private Information.

122.    By collecting and storing this data in its computer property, and sharing it, and using it for commercial gain, Defendant assumed a duty of care to use reasonable means to secure

and safeguard their computer property—and Class Members' Private Information held within it— to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of their security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a Data Breach.

123.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

124.    Defendant had a duty to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair ... practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

125.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

126.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

127.    Defendant gathered and stored the Private Information of Plaintiff and Class Members as part of its business of soliciting its services to its clients and its clients' patients, which solicitations and services affect commerce.

128.    Defendant violated the FTC Act by failing to use reasonable measures to protect the Private Information of Plaintiff and Class Members and by not complying with applicable industry standards, as described herein.

129.    Defendant breached its duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiff' and Class Members' Private Information, and by failing to provide prompt notice without reasonable delay.

130.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and those who received its services, which is recognized by laws and regulations, as well as common law.

131.    Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach or data breach.

132.    Defendant's multiple failures to comply with applicable laws and regulations constitute negligence *per se*.

133.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations, but also because Defendant is bound by industry standards to protect confidential Private Information.

134.    Defendant had full knowledge of the sensitivity of the Private Information, the types of harm that Plaintiff and Class Members could and would suffer if the Private Information was wrongfully disclosed, and the importance of adequate security.

135.    Plaintiff and Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class members had no ability to protect their Private Information that was in Defendant's possession.

136.    Defendant was in a special relationship with Plaintiff and Class Members with respect to the hacked information because the aim of Defendant's data security measures was to benefit Plaintiff and Class Members by ensuring that their personal information would remain protected and secure. Only Defendant was in a position to ensure that its systems were sufficiently secure to protect Plaintiff' and Class Members' Private Information. The harm to Plaintiff and Class members from its exposure was highly foreseeable to Defendant.

137.    Defendant owed Plaintiff and Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing their Private Information, including taking action to reasonably safeguard such data and providing notification to Plaintiff and the Class Members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

138.    Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

139.    Defendant had duties to protect and safeguard the Private Information of Plaintiff and the Class from being vulnerable to compromise by taking common-sense precautions when dealing with sensitive Private Information. Additional duties that Defendant owed Plaintiff and the Class include:

>    a.    To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures and

practices to ensure that Plaintiff's and Class members' Private Information was adequately secured from impermissible release, disclosure, and publication;

b. To protect Plaintiff's and Class Members' Private Information in its possession by using reasonable and adequate security procedures and systems; and

c. To promptly notify Plaintiff and Class Members of any breach, security incident, unauthorized disclosure, or intrusion that affected or may have affected their Private Information.

140. Only Defendant was in a position to ensure that its systems and protocols were sufficient to protect the Private Information that had been entrusted to them.

141. Defendant breached its duties of care by failing to adequately protect Plaintiff' and Class Members' Private Information. Defendant breached its duties by, among other things:

a. Failing to exercise reasonable care in obtaining, retaining, securing, safeguarding, protecting, and deleting the Private Information in its possession;

b. Failing to protect the Private Information in its possession using reasonable and adequate security procedures and systems;

c. Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store Private Information;

d. Failing to adequately train its employees to not store unencrypted Private Information in their personal files longer than absolutely necessary for the specific purpose that it was sent or received;

e. Failing to consistently enforce security policies aimed at protecting Plaintiff' and Class Members' Private Information;

f. Failing to mitigate the harm caused to Plaintiff and the Class Members;

g. Failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and

h. Failing to promptly notify Plaintiff and Class Members of the Data Breach that affected their Private Information.

142.    Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

143.    As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiff and Class Members have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

144.    Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Private Information of Plaintiff and Class Members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Private Information of Plaintiff and Class Members while it was within Defendant's possession and control.

145.    Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from taking meaningful, proactive steps to securing their Private Information and mitigating damages.

146.    As a result of the Data Breach, Plaintiff and Class Members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, responding to the fraudulent use of the Private Information, and closely reviewing and monitoring bank accounts, credit reports, and statements sent from providers and their insurance companies.

147.    Defendant's wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence.

148.    The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

149.    Plaintiff and the Class have suffered injury and are entitled to actual damages in amounts to be proven at trial.

## Count II
## BREACH OF IMPLIED CONTRACT
### (On behalf of Plaintiff and the Nationwide Class)

150.    Plaintiff re-alleges and incorporates by reference the paragraphs 1 though 18 above as if fully set forth herein.

151.    Plaintiff and Class Members were required to provide their PII to Defendant as a condition of owning a franchise or doing business with the Defendant.

152.    Plaintiff and Class Members provided their PII to Defendant in exchange for Jani-King's services. In exchange for the PII, Defendant promised to protect their PII from unauthorized disclosure.

153.    At all relevant times Defendant promulgated, adopted, and implemented written a Privacy Policy whereby it expressly promised Plaintiff and Class Members that it would only disclose PII under certain circumstances, none of which relate to the Data Breach.

154.    On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff' and Class Members' Private Information would remain protected.

155.    Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of

Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the Private Information only under conditions that kept such information secure and confidential.

156.    When Plaintiff and Class Members provided their Private Information to Defendant as a condition of relationship, they entered into implied contracts with Defendant pursuant to which Defendant agreed to reasonably protect such information.

157.    Defendant required Class Members to provide their Private Information as part of Defendant's regular business practices.

158.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

159.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

160.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

161.    Defendant breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

162.    As a direct and proximate result of Defendant's breaches of the implied contracts, Class Members sustained damages as alleged herein.

163.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

164.    Plaintiff and Class Members are also entitled to nominal damages for the breach of implied contract.

165.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate long term credit monitoring to all Class Members for a period longer than the grossly inadequate one-year currently offered.

**Count III**
**INVASION OF PRIVACY**
**(On behalf of Plaintiff and the Nationwide Class)**

166.    Plaintiff re-alleges and incorporates by reference the paragraphs 1 through 18 above as if fully set forth herein.

167.    Plaintiff and the Class Members have a legally protected privacy interest in their Private Information, which is and was collected, stored and maintained by Defendant, and they are entitled to the reasonable and adequate protection of their Private Information against foreseeable unauthorized access, as occurred with the Data Breach.

168.    Plaintiff and the Class Members reasonably expected that Defendant would protect and secure their Private Information from unauthorized parties and that their Private Information would not be accessed, exfiltrated, and disclosed to any unauthorized parties or for any improper purpose.

169.    The Defendant unlawfully invaded the privacy rights of Plaintiff and the Class Members by engaging in the conduct described above, including by failing to protect their Private Information by permitting unauthorized third-parties to access, exfiltrate and view this Private Information. Likewise, Defendant further invaded the privacy rights of Plaintiff and Class

34

Members, and permitted cybercriminals to invade the privacy rights of Plaintiff and Class Members, by unreasonably and intentionally delaying disclosure of the Data Breach, and failing to properly identify what Private Information had been accessed, exfiltrated, and viewed by unauthorized third-parties.

170.    This invasion of privacy resulted from Defendant's failure to properly secure and maintain Plaintiff and Class Members' Private Information, leading to the foreseeable unauthorized access, exfiltration, and disclosure of this unguarded data.

171.    Plaintiff and Class Members' Private Information is the type of sensitive, personal information that one normally expects will be protected from exposure by the very entity charged with safeguarding it. Further, the public has no legitimate concern in Plaintiff and Class Members' Private Information, and such information is otherwise protected from exposure to the public by various statutes, regulations and other laws.

172.    The disclosure of Plaintiff and Class Members' Private Information to unauthorized parties is substantial and unreasonable enough to be legally cognizable and is highly offensive to a reasonable person.

173.    Defendant's willful and reckless conduct which permitted unauthorized access, exfiltration and disclosure of Plaintiff and Class Members' Private Information is such that it would cause serious mental injury, shame or humiliation to people of ordinary sensibilities.

174.    The unauthorized access, exfiltration, and disclosure of Plaintiff and Class Members' Private Information was without their consent, and in violation of various statutes, regulations and other laws.

175.    As a result of the invasion of privacy caused by Defendant, Plaintiff and Class Members suffered and will continue to suffer damages and injury as set forth herein.

176.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution, injunctive relief, reasonable attorneys' fees and costs, and any other relief that is just and proper.

### Count IV
### UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Nationwide Class)

177.    Plaintiff re-alleges and incorporates by reference the paragraphs 1 through 18 above as if fully set forth herein.

178.    Plaintiff and Class Members conferred a monetary benefit on Defendant in the form of the provision of their Private Information and Defendant would be unable to engage in its regular course of business without that Private Information.

179.    Defendant appreciated that a monetary benefit was being conferred upon it by Plaintiff and Class Members and accepted that monetary benefit.

180.    However, acceptance of the benefit under the facts and circumstances outlined above make it inequitable for Defendant to retain that benefit without payment of the value thereof.  Specifically, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff' and Class Members' Personal Information.  Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite data security.

181.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures.

182.    Defendant acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged. If Plaintiff and Class Members knew that Defendant had not secured their Private Information, they would not have agreed to provide their Private Information to Defendant.

183.    Plaintiff and Class Members have no adequate remedy at law.  As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered or will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

184.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

185.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

## Count V
### Declaratory Judgment
### (On behalf of Plaintiff and the Nationwide Class)

186.    Plaintiff re-alleges and incorporates by reference the paragraphs 1 through 18 above as if fully set forth herein.

187.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

188.    An actual controversy has arisen in the wake of Defendant's data breach regarding its present and prospective common law and other duties to reasonably safeguard its customers' Private Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class members from further data breaches that compromise their Private Information.

189.    Plaintiff alleges that Defendant's data security measures remain inadequate. Plaintiff will continue to suffer injury as a result of the compromise of their Private Information and remain at imminent risk that further compromises of their Private Information will occur in the future.

190.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Jani-King continues to owe a legal duty to secure consumers' Private Information and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes;

b. Jani-King continues to breach this legal duty by failing to employ reasonable measures to secure consumers' Private Information.

191.    The Court also should issue corresponding prospective injunctive relief requiring Jani-King to employ adequate security protocols consistent with law and industry standards to protect consumers' Private Information.

192.    If an injunction is not issued, Plaintiff and Class members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Jani-King. The risk of another such breach is real, immediate, and substantial. If another breach at Jani-King occurs, Plaintiff and Class members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

193.    The hardship to Plaintiff and Class members if an injunction does not issue exceeds the hardship to Jani-King if an injunction is issued. Among other things, if another massive data breach occurs at Jani-King, Plaintiff and Class members will likely be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Jani-King of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Jani-King has a pre-existing legal obligation to employ such measures. Issuance of the requested injunction will not do a disservice to the public interest.

194.    To the contrary, such an injunction would benefit the public by preventing another data breach at Jani-King, thus eliminating the additional injuries that would result to Plaintiff and the millions of consumers whose Private Information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    For an Order certifying this action as a class action and appointing Plaintiff and her counsel to represent the Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff' and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures of its Data Breach to Plaintiff and Class Members;

C.    For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

D.    For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

E.    For declaratory relief as requested;

F.    Ordering Defendant to pay for lifetime credit monitoring services for Plaintiff and the Class;

G.  For an award of actual damages, compensatory damages, and statutory damages, in an amount to be determined, as allowable by law;

H.  For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

I.  Pre- and post-judgment interest on any amounts awarded; and

J.  Such other and further relief as this Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: April 30, 2025                                 Respectfully submitted,

/s/  *Joe Kendall*
JOE KENDALL
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
214-744-3000 /214-744-3015 (Facsimile)
jkendall@kendalllawgroup.com

**EGGNATZ | PASCUCCI**
Joshua H Eggnatz*
Shana Gizzie*
7450 Griffin Rd, Ste. 230
Davie, FL 33314
Telephone: (954) 889-3359
Facsimile: (954) 889-5913
Email: JEggnatz@JusticeEarned.com
Email: SGizzie@JusticeEarned.com

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
Melissa R. Emert*
Gary S. Graifman*
135 Chestnut Ridge Road
Suite 200
Montvale, NJ 07645
Telephone : 201-391-7000

Facsimile : 201-307-1086
memert@kgglaw.com
ggraifman@kgglaw.com

**Attorneys for Plaintiff and the Class**

*pro hac vice forthcoming*